## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SERVICE EXPERTS, LLC,

        *Plaintiff,*

vs.

        Case No. 21-CV-2510

BRIAN OTTE and SERVICE
CHAMPIONS, LLC

        *Defendants.*

## MEMORANDUM AND ORDER

Before the Court is Defendant Service Champions, LLC's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 12). Plaintiff Service Experts seeks injunctive relief and damages due to a variety of claims against Service Champions and Brian Otte, including breach of contract and misappropriation of trade secrets. Because Service Experts fails to show that Service Champions purposefully directed its activities towards the state of Kansas, this motion is hereby granted.

## I.     Factual and Procedural Background[1]

Service Experts hired Brian Otte in 2005 as a General Manager of its facility in Overland Park, Kansas.  In 2015, Service Experts rehired Otte for the same position.  Service Experts later promoted Otte to Regional Director of the Northeast Region in 2019 and transferred him to the West Region the next year.

In 2015, when he was rehired, Service Experts required Otte to sign a Confidentiality, Non-Competition, Non-Solicitation, and Non-Disparagement Agreement ("Agreement").  The Agreement forbade Otte from disclosing any confidential information unless the disclosure benefitted Service Experts.  The Agreement further prohibited Otte from "provid[ing] product or service to a Competing Business in the Restricted Area."  The Restricted Area covered a 100-mile radius surrounding any Service Experts facility, district, territory, or branch that Otte managed during the last twelve months of his employment.

The Agreement also required Otte to not (1) encourage a Service Experts employee to quit, (2) recruit or hire a Service Experts employee, (3) encourage a Service Experts customer to reduce business or buy a product or service from a competing business within the 100-mile radius of a Service Experts facility, or (4) help a competing company do any of the previous items.  The Agreement required Otte not take any action that would harm Service Experts or its reputation.

While working for Service Experts, Otte contacted Chris Cos, a Service Champions employee. Otte asked Cos to reach out to Frank DiMarco about a potential job with Service Champions. Service Champions is a competitor of Service Experts, with locations within the Agreement's restricted area.  Otte had been friends with DiMarco, Service Champions' Chief

---

[1] The facts are taken from Service Experts' complaint and Otte's deposition and are considered true for the purpose of this motion.

Operations Officer, for sixteen or seventeen years.  Service Champions knew that Otte lived in Kansas when negotiating the employment contract.  Service Experts does not allege that Service Champions hired Otte because he lived in Kansas, nor does it allege that Service Champions intended to use Otte to establish business in Kansas.

On April 12, 2021, Otte resigned from his position at Service Experts.  Four days later, Otte began employment with Service Champions, holding a comparable position to his job with Service Experts.  Otte performed approximately thirty-five percent of his duties for Service Champions while in Kansas.  From April 2021 to the middle of January 2022, he spent 135 out of 275 days in Kansas and worked 95 of those days.  During the days worked, Otte sent emails, took calls, and attended zoom meetings.

Otte was hired at Service Champions to expand the company, in part by identifying and meeting with other HVAC companies to facilitate an acquisition.  In late May 2021, Otte and DiMarco met in Kansas with representatives from A.B. May, an HVAC company based in Missouri, to discuss a potential acquisition.  Communications with A.B. May continued for a short time after the meeting, but the companies did not reach an agreement and communications ended.

In November of 2021, Service Experts filed suit on account of Otte's employment with Service Champions, claiming that Service Champions violated the Kansas Uniform Trade Secrets Act and the Defend Trade Secrets Act.  Service Experts claims Service Champions used confidential information obtained by virtue of Otte's employment at Service Experts and that Service Champions tortiously interfered with business expectancy by facilitating Otte's violation of the Agreement.  Furthermore, it claims Service Champions interfered with a contractual relationship by directing or causing Otte to become employed by Service Champions.  Service Champions now moves to dismiss for lack of personal jurisdiction.

## II.    Legal Standard

Under Rule 12(b)(2), a defendant may move for dismissal of any claim in which there is no personal jurisdiction.[2]   A plaintiff opposing a motion to dismiss based on a lack of personal jurisdiction bears the burden of showing that jurisdiction over the defendant is appropriate.[3]   A plaintiff must make a prima facie showing that personal jurisdiction is proper to avoid dismissal.[4]   Once the plaintiff makes a prima facie showing, the defendant "must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.' "[5]

The court views the allegations in the complaint as true if they are uncontroverted by the defendant's affidavits.[6]   "If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."[7]   "However, only the well pled facts of [the] plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true."[8]   The plaintiff must support its jurisdictional allegations in a "complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading."[9]

---

[2] Fed. R. Civ. P. 12(b)(2).

[3] *Thermal Components Co. v. Griffith*, 98 F. Supp. 2d 1224, 1227 (D. Kan. 2000) (citing *Kuenzle v. HTM Sport–Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996)).

[4] *Id.*

[5] *Id.* at 1227 (quoting *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998)).

[6] *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

[7] *Id.* (internal quotations and citations omitted).

[8] *Id.* (citations omitted).

[9] *Id.* at 1508 (quoting *Pytlik v. Pro. Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989)).

### III.      Analysis

The Court determines personal jurisdiction over parties using the law of the forum state.[10] To establish whether the Court has personal jurisdiction over Service Champions, Service Experts must show that the exercise of jurisdiction (1) is legitimate under the state's long-arm statute, and (2) does not offend the Due Process Clause of the Fourteenth Amendment.[11]  Because the Kansas Supreme Court interpreted the Kansas long-arm statute to extend jurisdiction to the fullest extent allowed under the Due Process Clause of the Fourteenth Amendment,[12] the Court need not conduct a statutory analysis and may proceed directly to the due process analysis.[13]

The Due Process Clause requires that the defendant " 'purposefully established minimum contacts with the forum State' and that the 'assertion of personal jurisdiction would comport with fair play and substantial justice.' "[14]  The defendants contacts with the forum state may give rise to either general or specific jurisdiction.[15]  Service Experts does not contend that the Court has general jurisdiction over Service Champions, and the Court does not otherwise find the exercise of general jurisdiction over Service Champions is appropriate.  Therefore, the Court limits its analysis to the issue of specific personal jurisdiction.

A court may exercise specific jurisdiction under the minimum contacts test if two elements are met: (1) the out-of-state defendant "purposefully directed" its activities toward the forum

---

[10] *Kesters Merch. Display Int'l, Inc. v. Surfacequest, Inc.*, 2022 WL 1489658, at *3 (D. Kan. 2022).

[11] *Klein v. Cornelius*, 786 F.3d 1310, 1317 (10th Cir. 2015) (citation omitted); *Kuenzle*, 102 F.3d at 455.

[12] *Merriman v. Crompton Corp.*, 282 Kan. 433, 146 P.3d 162, 179 (2006) (citation omitted).

[13] See *Leichty v. Bethel Coll.*, 2019 WL 5549167, at *13 (D. Kan. 2019) (citing *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011)).

[14]  *C5 Med. Works, LLC v. CeramTec GMBH*, 937 F.3d 1319, 1322 (10th Cir. 2019) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

[15] *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (citations omitted).

state[16] and (2) the plaintiff's injuries "arise out of" the defendant's purposefully directed activities.[17] Because the Court finds that Service Champions did not purposefully direct its activities at the forum state, it need only analyze the first part of the test.

The "purposeful direction" requirement ensures that "an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state."[18] The relationship between the defendant and the forum must arise from contacts that the "*defendant himself*" created with the forum state.[19] "The analysis must focus on 'the defendant's contacts with the forum' and not merely the defendant's contacts 'with persons who reside there."[20] "Mere foreseeability" of causing injury in the forum state does not satisfy purposeful direction.[21]

The Tenth Circuit has identified several frameworks for determining whether an out-of-state defendant's contacts with the forum satisfy the "purposeful direction" requirement, including: (1) continuing relationships with forum state residents; (2) market exploitation; and (3) harmful effects in the forum state.[22] The plaintiff does not attempt to show that the defendant purposefully directed its activities towards the forum state under the market exploitation or harmful effects frameworks. Therefore, the Court will only analyze the continuing relationships framework.

---

[16] *Burger King*, 471 U.S. 462, 472 (1985) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)).

[17] *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

[18] *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008) (quoting *Burger King*, 471 U.S. at 475).

[19] *Kesters*, 2022 WL 1489658, at *4 (quoting *Walden v. Fiore*, 571 U.S. 277, 284-85 (2014); *Old Republic*, 877 F.3d 895, 904-05; *OMI Holdings*, 1498 F.3d 1068, 1092.

[20] *Id.*

[21] *Old Republic*, 877 F.3d at905 (citing *Burger King*, 471 U.S. at 474).

[22] *Id.*

The continuing relationships of the defendant are those by which the defendant has "reached out beyond one state and created continuing relationships and obligations" with the a resident of forum state.[23]   The framework is not satisfied merely through an individual contract with an out-of-state party.[24]   Rather, the Court evaluates "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing."[25]   Here, Service Experts argues that Service Champions maintained a continuing relationship with Kansas through its employment of Otte.   The Court finds that Service Champions does not have a continuing relationship with the forum state.

### A.   Prior Negotiations

Service Champions' prior negotiations with Otte do not show that Service Champions maintained a continuing relationship with Kansas.   Service Experts imply that, through DiMarco, Service Champions had prior negotiations with Otte before Otte's employment contract.   However, Service Experts does not provide any evidence to show such negotiations took place.

In Otte's deposition, Otte states that he initiated contact with Service Champions and did not have prior negotiations with Service Champions.   On a motion to dismiss for lack of personal jurisdiction, the Court views the allegations in the complaint as true if they are uncontroverted.[26]   However, if the facts of the complaint are controverted, both parties must present evidence to support their position.[27]  If both parties present evidence, the Court must resolve the dispute in the

---

[23] *Id.* (alterations omitted) (quoting *Burger King*, 471 U.S. at 478).

[24] *Id.*

[25] *Burger King*, 471 U.S. at 479.

[26] *Wenz*, 55 F.3d at 1505.

[27] *Id.*

nonmovant favor.[28] But because Service Experts does not present conflicting evidence, the Court must resolve the conflict in favor of Service Champions, and find that no prior negotiations support the exercise of personal jurisdiction over Service Champions.

### B.      Terms of Otte's Employment Contract

The terms of the contract also show that Service Champions does not create a continuing relationship with Kansas through its employment of Otte.  The employment contract clearly shows that Otte was expected to work in California, not Kansas.  The terms of the contract do not include any information about expanding the business in Kansas or contain evidence pertaining to a continuing relationship with the state.

### C.      Contemplated Future Consequences

Service Experts provides no indication that Service Champions believed that an employment contract with Otte would establish future business in Kansas. While Service Champions expected Otte to expand the business, it did not foresee that Otte would expand the business in Kansas.   Service Experts does not allege or provide evidence to show Service Champions envisioned Otte's employment in Kansas as the start of continuing and wide-reaching contacts in Kansas.  Service Champions outlined that it intended Otte to be the regional manager of several states; none of which were Kansas. In fact, Service Champions initially required Otte to move outside of Kansas to Brea, California.  It was only after the creation of the employment contract that Service Champions contemplated expanding their market into Kansas and allowed Otte to stay.  There is no evidence or allegations that Service Champions intended to use Otte's contract as a springboard to recruit more Kansans or people to work in Kansas. Therefore, Service

---

[28] *Id.*

Champions did not envision its employment contract with Otte would establish future contact with Kansas.

### D.     Actual Course of Dealings

Service Experts argues that the actual course of dealings between Service Champions and Otte establishes a continuing relationship with the forum state.  It claims that, while the terms of the contract do not explicitly show that Service Champions intended for Otte to establish contact with the forum state, Otte's actual work on behalf of Service Champions in the forum state does establish a continuing relationship.  Service Experts points to two groups of activities to support its argument: Otte's solicitation of business on behalf of Service Champions in Kansas and Otte's performance of remote work for Service Champions while in Kansas.  However, neither establish a continuing relationship between Service Champions and Kansas.

#### 1.     Otte's Solicitation of Business in Kansas

Otte's solicitation of business for Service Champions in Kansas is not sufficient to establish that Service Champions purposefully directed its activities toward Kansas. Service Experts heavily rely on *Thermal Insulation Systems, Inc. v. Ark-Seal Corp.*[29]  in arguing for the opposite conclusion.  In *Thermal Insulation*, this Court found the nonresident company availed itself of the benefits of the laws of Kansas by soliciting business within the state.[30]  That company made numerous communications with the Kansas-resident customer.[31]  In addition to advertising to Kansas residents, the company entered into a contract with a Kansas customer for the purchase of

---

[29] *Thermal Insulation Sys., Inc. v. Ark-Seal Corp.*, 508 F. Supp. 434, 442 (D. Kan. 1980)

[30] *Thermal Insulation*, 508 F. Supp. 434, 442 (D. Kan. 1980) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)).

[31] *Thermal Insulation*, 508 F. Supp. at 443.

a product, attempted to repair the defective product, and later returned the repaired product to Kansas.[32]

The Court finds this case distinguishable from *Thermal Insulation*.  Unlike the defendant in *Thermal Insulation*¸ Service Champions did not engage in numerous communications to solicit business in Kansas.  While the defendant in *Thermal Insulation* made only one contract with a resident of the forum state, the contract required a continuing relationship with the customer in the forum state to enforce.  By contrast, Otte, on behalf of Service Champions, met with A.B. May once in person to discuss a potential acquisition.  Unlike *Thermal Insulation*, Service Champions did not enter into a contract with a Kansas resident because no contract was created, and Service Experts does not allege or provide evidence that A.B. May is a Kansas resident.  Therefore, Otte's solicitation of A.B. May does not establish a continuing relationship between Service Champions and the state of Kansas.

### 2.    Otte's Performance of Remote Work While in Kansas

Service Experts relies on *Etienne v. Wolverine Tubing* to establish that Service Champions, in hiring Otte, created sufficient contacts with the state of Kansas through Otte's performance of work in the state.  In *Etienne*, the court found personal jurisdiction existed when the resident plaintiff initiated an employment contract with an out-of-state defendant.[33]  The defendant made an oral offer of employment to the plaintiff.  The plaintiff responded by requesting a written offer, which the defendant granted.[34]  Per the employment agreement, the plaintiff was phycological

---

[32] *Id.*

[33] *Etienne v. Wolverine Tubing*, 12 F. Supp. 2d 1173, 1180 (D. Kan 1998).

[34] *Id.* at 1176.

evaluated.[35]  When he failed the evaluation, the defendant terminated the employment contract.[36] While *Etienne* dealt with a situation similar to the one before the Court, the Court finds *Ferren v. Westmed*[37] to be more persuasive because it is more factually analogous, is more recent than the 1998 decision in *Etienne*, and applies an interpretation of the continuing relations framework more consistent with current Tenth Circuit precedent.[38]

The court in *Ferren* applied *Old Republic* to find it had no personal jurisdiction over a defendant company that hired a Kansas resident for regional work.[39]  The defendants hired the plaintiff knowing that the plaintiff resided in Kansas, maintained an office in Kansas, and intended to live and remain in Kansas after being employed.[40]  The plaintiff performed 40% of his work in Kansas, received products for testing in Kansas, and met with other of the defendants' employees in Kansas.[41]  Despite the defendants' clear intention to hire a person it knew to reside in Kansas, the court found the facts insufficient to establish personal jurisdiction because the defendants did not seek to hire a Kansas-based employee.[42] The defendants made it clear that they intended for the plaintiff to travel to perform work.[43] The plaintiff's residence in Kansas was "random and not

---

[35] *Id.* at 1177.

[36] *Id.*

[37] 2019 WL 7116082 (D. Kan. 2019).

[38] *See Old Republic*, 877 F.3d 895, 910 (finding no showing that the defendant "specifically sought to do business, negotiated a contract envisioning significant and long-term obligations, or conducted frequent and regular communications with the [forum state]").

[39] *Ferren*, 2019 WL 7116082 at *3 (D. Kan. 2019).

[40] *Id.* at *2.

[41] *Id.*

[42] *Id.* at *3.

[43] *Id.*

an indication of defendants' purposeful conduct"[44] because the defendants were equally likely to hire the plaintiff if he lived in any other state.[45]   The defendants were seeking to find a national sales manager, not to promote their business interests in the state or make Kansas a central location from which the national sales manager may work.[46] The plaintiff could perform his job in any state, and his actions in Kansas merely demonstrate his own contacts with the state, not the defendants' contacts.   Therefore, the defendants' hiring of the plaintiff failed to demonstrate that they "purposefully directed" their activities towards Kansas.

Service Experts fails to show that Service Champions purposefully directed their employment contract with Otte to establish further business in the state.  Service Champions does not dispute that Otte lived in Kansas when they hired him.  However, Service Experts does not allege that Service Champions hired Otte because he lived in Kansas.  No evidence suggests that Service Champions intended for Otte to perform his duties in Kansas.  Otte's residence in Kansas is random and not an indication of Service Champions' purposeful conduct.  It seems likely that Service Champions would have hired Otte for the position regardless of where he lived.  Otte's participation in virtual meetings and discussions regarding Service Champions' business operations were numerous.  However, Otte performed less work in Kansas than the plaintiff in *Ferren*.[47]  Additionally, none of the work that Otte did demonstrates Service Champions' intent to direct its activities toward a Kansas resident.  Like the plaintiff in *Ferren*, Otte's work could be

---

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *Id.* at *2.

performed in any state, meaning it is purely incidental that the work was performed in Kansas.[48] The fact Service Champions knew that Otte resided and performed his work in Kansas is not sufficient to establish purposeful contact with Kansas. Therefore, the Court finds that Otte's performance of work under the employment contract is insufficient to establish that Service Champions purposefully directed its activities toward a resident of the state.

The Court concludes that Service Experts fails to establish Service Champions had a continuing relationship with the forum state under an analysis of prior negotiations, contemplated future consequences, terms of the contract, and actual course of dealings. A comparison with other similar cases shows a lack of personal jurisdiction. Therefore, Service Experts fails to make a prima facie case establishing general or specific personal jurisdiction over Service Champions. Because the Court does not have personal jurisdiction over Service Champions under the Due Process Clause, the Court will not conduct an analysis on the other issues presented.

**IT IS THEREFORE ORDERED** that Defendant Service Champion, LLC's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 12) is **GRANTED.** Defendant Service Champion, LLC is terminated from the case.

**IT IS SO ORDERED.**

Dated this 1st day of July, 2022.


ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE

---

[48] *Id.* at *3.

-13-